**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

| | |
|---|---|
| **HARRISON COUNTY MISSISSIPPI,** ) | |
| **CITY OF BILOXI MISSISSIPPI,** ) | |
| **CITY OF D'IBERVILLE, MISSISSIPPI,** ) | |
| **CITY OF PASS CHRISTIAN, MISSISSIPPI,** ) | |
| **MISSISSIPPI HOTEL AND LODGING** ) | |
| **ASSOCIATION, and MISSISSIPPI** ) | |
| **COMMERCIAL FISHERIES UNITED, INC.** ) | |
| ) | |
| **VS.** )   Case No.:   1:24cv21 LG-BWR | |
| ) | |
| **U.S. ARMY CORPS OF ENGINEERS** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**I.  INTRODUCTION**

1.      In the spring and summer of 2019, the U.S. Army Corps of Engineers [sometimes hereafter "the Corps"] opened the Bonnet Carré Spillway.  This released a flood of polluted Mississippi River water through the Lake Pontchartrain Basin and into the Mississippi Sound, wreaking havoc on the natural resources, communities, and businesses on the Mississippi Gulf Coast.

2.      While virtually all marine life in the Sound was affected, this complaint is necessitated by the shocking impacts of the 2019 Bonnet Carré Spillway operations on the resident bottle nose dolphin population in the Mississippi Sound and Lake Borgne.

3.      The bottlenose dolphin is one of the most beloved species found in the Gulf of Mexico.  Known for its intelligence, curiosity and sometimes playful nature, the bottlenose is an important part of the coastal ecosystem and is an important part of cultural experience of the

Gulf Coast for locals and visitors alike. Scientists have also referred to the bottlenose dolphin, due to its role as a long-lived apex predator, as a sentinel of the health of the marine ecosystem.

4.      The Marine Mammal Protection Act requires that federal agencies like the Corps of Engineers acquire an incidental take permit from the U.S. Department of Commerce when their actions, like the operation of the Bonnet Carré Spillway, may result in the "take" of a marine mammal like the bottlenose dolphin.  "Take" of a marine mammal is very broadly defined to include disturbing a marine mammal stock in the wild by disrupting behavioral patterns.

5.      The consequences of the 2019 openings of the Bonnet Carré Spillway on the bottlenose dolphin population of the Mississippi Sound and Lake Borgne went far beyond a simple disruption of behavioral patterns.  The bottlenose dolphin evolved in an environment with clean, saline water like that found in the Gulf of Mexico and the Mississippi Sound.  The massive volumes of polluted fresh water diverted through the Bonnet Carré Spillway and into the Mississippi Sound caused direct and indirect mortality of resident bottlenose dolphins.  Many of the dolphins that did survive developed extremely painful and debilitating skin lesions.

6.      Given the importance of the bottlenose dolphin to the ecosystem, culture and economy of the Mississippi Gulf Coast, the undersigned local governments and groups request the following:

(1)  A declaration that the Corps of Engineers has unlawfully withheld or unreasonably delayed agency action by failing to engage in the incidental take permitting process under the Marine Mammal Protection Act;

(2)  An order requiring the Corps of Engineers to undertake its permitting obligations on a schedule established and supervised by this Court; and

(3)  If required, preliminary injunctive relief requiring the Corps to comply with its permitting obligations under the MMPA prior to any further operation of the Bonnet Carré Spillway.

## II.  JURISDICTION AND VENUE ARE PROPER IN THIS DISTRICT

7.      This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it involves questions of federal law.  The Court further has jurisdiction due to the waiver of sovereign immunity in the Administrative Procedure Act, 5 U.S.C. 706 *et seq.*

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (e) because a substantial part of the events giving rise to the claims occurred in this district, and the Plaintiffs reside in this district.

## III.  THE PLAINTIFFS IN THIS CASE ARE LOCAL GOVERNMENTS, FISHERMEN AND BUSINESSES WHO ARE DIRECTLY DAMAGED BY THE CORPS' ACTS CONTRARY TO LAW AND FAILURE TO ACT.

9.      The City of Biloxi, Mississippi, is a municipality organized under the law of Mississippi.  It is the third largest city in Mississippi, directly borders the Mississippi Sound, and has over 44,000 residents.  Biloxi has a long heritage in maritime commerce and tourism, and the health of the Gulf of Mexico and its resident species, including the bottlenose dolphin, remain a mainstay of the City's cultural heritage, economy, and the well-being of its residents. The City is also a waterfront property owner, with interests in the Biloxi Small Craft Harbor and Marina, Commercial Docking Facility, Point Cadet Marina, Sherman Canaan Back Bay Fishing Docks, Popps Ferry Causeway Park, Old Biloxi/Ocean Springs Fishing Bridge, eleven public recreational fishing piers and boat launches, and numerous parcels of land bordering the waterfront.  The City also holds littoral rights and other interests in public trust tidelands throughout the 243 miles of Biloxi's shoreline. Tourism based on the resources of the

Mississippi Sound, including the opportunity to experience the bottlenose dolphin in its habitat in the sound, is a critical part of Biloxi's economy and culture. For citizens of Biloxi and visitors alike, the ability to experience the bottlenose dolphin in its habitat in the Sound is a source of cultural, spiritual, and economic wellbeing. The loss of this important aspect of the City's cultural heritage and connection to the water is immeasurable. Biloxi's interests and those of its citizens have been and will be harmed by the Corps failure to act in the permitting process for incidental take of bottlenose dolphins, and these harms will be redressed by the relief requested in this matter. In short, the health and proprietary interests of the City are inseparable from the health of the Mississippi Sound, and this includes the bottlenose dolphin population.

10.    Harrison County, Mississippi is a county organized under the law of Mississippi. It is the second most populous county in Mississippi, with over 200,000 residents. Harrison County borders the Mississippi Sound, and like Biloxi has a long heritage in maritime commerce and tourism. Tourism is a mainstay of the County's economy and the well-being of its residents. Harrison County is also home to the Institute for Marine Mammal Studies, a non-profit organization that provides research and education about marine mammal populations, including the bottlenose dolphin. Harm to the bottlenose dolphin population in the Sound harms the IMMS' scientific and educational mission, and by extension harms Harrison County and its citizens. Harrison County's proprietary interests and those of its citizens have been and will be harmed in the same manner as Biloxi's by the failure of the Corps failure to act as detailed in this complaint. The harms to the County will be redressed by the relief requested in this matter.

11.    The City of D'Iberville, Mississippi, is a municipality organized under the law of Mississippi. D'Iberville borders the body of water known as the Bay of Biloxi or Back Bay of

Biloxi, which is part of an estuary that includes the Mississippi Sound and is also habitat for the bottlenose dolphin. These harms will be redressed by the relief requested in this matter.

12.     The City of Pass Christian, Mississippi is a municipality organized under the law of Mississippi. Affectionately known to generations as "the Pass," the city is essentially a peninsula in the Mississippi Sound.  Pass Christian's proprietary interests and those of its citizens have been and will be harmed in the same manner as Biloxi's by the Corps' failure to act as detailed in this complaint.  These harms will be redressed by the relief requested in this matter.

13.     The Mississippi Hotel and Lodging Association is a non-profit professional association headquartered in Biloxi, Mississippi, which serves over 350 Mississippi lodging and tourism businesses.  Members of the Association include hotels, Convention and Visitors Bureaus, Chambers of Commerce, Welcome Centers, and others.  The wellbeing of Association members, particularly those on the Gulf Coast, is dependent on a healthy ecosystem in the Mississippi Sound, including the bottlenose dolphin population. Seeing the bottlenose dolphin in its habitat in the Mississippi Sound is an important part of visitors' experience on the Gulf Coast. The Association's own interests and those of its members have been and will be harmed by the Corps' failure to act as detailed in this complaint, and these harms will be redressed by the relief requested in this matter.

14.     Mississippi Commercial Fisheries United, Inc. is a Mississippi non-profit corporation that exists to protect the common interests of Mississippi's commercial fishing industry, promote sustainable fisheries, and advocate for commercial fishermen and consumers. The members of MSCFU fish not just for economic reasons, but also because they love being on the water and observing all the species of the Gulf of Mexico and the Mississippi Sound,

including the bottlenose dolphin. MSCFU's own interests and those of its members have been

and will be harmed by the Corps' failure to act as detailed in this complaint, and these harms will

be redressed by the relief requested in this matter. The interests of the MSCFU's members

include the health of their businesses, and the aesthetic, recreational, cultural and spiritual values

provided by the Mississippi Sound and its bottlenose dolphin population.

## IV.  THE CORPS IS THE AGENCY RESPONSIBLE FOR OPERATING THE BONNET CARRÉ SPILLWAY.

15.    Defendant U.S. Army Corps of Engineers is an agency of the United States

Government and is responsible for the physical operation of the Bonnet Carré Spillway.

16.    The Mississippi River Basin is the

world's third largest, stretching from New York to

Montana, exceeded in volume only by the Amazon

and Congo River basins. The Mississippi River drains

over one million square miles or 41% of the



contiguous United States, including all or parts of thirty-one states and two Canadian provinces.

Since the mid-20th Century, the Mississippi River has carried a high and unnatural load of

nitrogen and phosphorus pollution, primarily from agricultural practices in the Midwest.

17.    The Mississippi River in its natural state is not directly connected to the

Mississippi Sound and Lake Borgne.  However, in the early 1930's, as part of an effort to

address flooding on the Mississippi River, the U.S. Army Corps of Engineers constructed the

Bonnet Carré Spillway Control Structure on the east bank of the river just upstream of the city of

New Orleans.  The Bonnet Carré Spillway is a control structure that can be opened when the

river is in higher stages in order to divert Mississippi river water into Lake Pontchartrain.  This

polluted fresh water then flows through the passes known as the Rigolets at the southern end of

Lake Pontchartrain, through Lake Borgne, and ultimately into the Mississippi Sound. The Bonnet Carré Spillway is capable of diverting more than 250,000 cubic feet per second of flows from the Mississippi. At this volume the Bonnet Carré would rank as the fifth largest river in the contiguous United States.

18.     The Corps has sometimes incorrectly asserted that release of water through the Bonnet Carré Spillway replicates natural river flooding conditions because on several historical occasions the river flowed through crevasses into Lake Pontchartrain. This assertion is demonstrably incorrect because the Mississippi River is in fact drastically modified from its historical condition and is substantially controlled by the Corps itself. The construction of levees and isolation of the river from its natural floodplain have drastically changed the flow regime in the river, and drastically changed the historic behavior of the river. In addition, the river water released through the Bonnet Carré Spillway in recent decades contains high levels of pollutants which were not present before the construction of the present river control system.

19.     The Corps retains discretion to control the volume of discharges through the Bonnet Carre Spillway in a reasonable manner. Further, by long-term planning and construction, the Corps can reduce or mitigate the need for use of the Bonnet Carré Spillway. The Corps therefore has options open to it to reduce the impacts of Bonnet Carré Spillway operations to the Mississippi Sound and Lake Borgne, including to the resident bottlenose dolphin population.

## V.  THE 2019 OPENINGS OF THE BONNET CARRÉ SPILLWAY CAUSED DIRECT AND INDIRECT HARM TO BOTTLENOSE DOLPHINS IN THE MISSISSIPPI SOUND AND ADJACENT AREAS.

20.     The Bonnet Carré Spillway was opened from February 27, 2019, through April 11, 2019, and again from May 10, 2019, through July 27, 2019, for a total of over 120 days. This is the largest number of days of operation of the spillway since it was completed in 1932.

In 2019 the Bonnet Carré Spillway discharged approximately 10.5 trillion cubic feet of Mississippi River water into the area of the Mississippi Sound.

21.     As a consequence of this massive discharge, salinities in Mississippi coastal waters plummeted. Salinities were near zero in many areas, rather than the more saline water usually found in the summer months.  The influence of the Mississippi River water released through the spillway extended from the western parts of the Mississippi Sound, to points outside the barrier islands and to the easternmost monitoring stations in the Mississippi Sound and near Mobile Bay.

22.     In 2023 the United States Court of Appeal for the Fifth Circuit stated that "the Spillway's deployment takes a toll on a host of environmental and economic interests, causing everything from disruptions to oysters, sea turtles, and shrimp, to toxic algae blooms, seafood warnings, and beach closures." *Harrison County v. U.S. Army Corps of Eng'rs,* 63 F.4th 458, 460 (5th Cir. 2023).

23.     In addition to disrupting natural salinity regimes, the Mississippi River water from the Bonnet Carré was laden with nutrient pollution from sources in the upstream states, principally from virtually unregulated agricultural sources. Concentrations of nitrates and phosphorus compounds in Mississippi waters were far above historic levels.  The combination of very low salinity fresh water, high nutrient pollution loads, and warm temperatures resulted in blooms of toxic blue green algae, which can cause illness in humans and death in animals like the bottlenose dolphin.

24.     Bottlenose dolphins are typically found in salinity ranging from 25-30 parts per thousand. They periodically experience lower salinity environments through natural conditions, but long exposure to low salinity can result in skin lesions, abnormal blood chemistry, secondary

infections, and death.  The severity of these impacts depends on how low the salinity goes and how long the low salinity lasts. These health impacts can be worse for dolphins with pre-existing conditions, such as injuries, infections, poor nutrition, or immune suppression.

25.    Genetic data indicate that the bottlenose dolphin population of the Northern Gulf of Mexico includes 31 relatively discrete stocks found in bay, sound, and estuary complexes. The Mississippi Sound is home to the population segment designated as the Mississippi Sound-Lake Borgne-Lake Boudreau stock. 2018 data from the National Marine Fisheries Service estimated there were approximately 1,265 dolphins in this stock.  The Mississippi Sound-Lake Borgne-Lake Boudreau stock was heavily and adversely impacted by the 2010 BP oil spill.

26.    The National Oceanic and Atmospheric Administration defines "stranding" for cetaceans like bottlenose dolphins as circumstances when the animal is found dead, either on the beach or floating in the water, or alive on the beach and unable to return to the water.[1]  The two years with the highest recorded numbers of dolphin strandings in the Mississippi Sound were 2011 (147) and 2019 (166). As set out above, 2011 and 2019 were major flood years on the Mississippi and saw extremely high discharges through the Bonnet Carré Spillway. The 2019 strandings involved larger numbers of mature dolphins, and strandings occurred later than the normal peak season in spring. There was also an unusually high number of strandings from Texas to Florida in 2019, but the greatest concentration of strandings in the Gulf of Mexico was in the Mississippi Sound and eastern Louisiana. The elevated strandings in the Sound were observed to progress from west – the part of the Sound closest to the Bonnet Carré Spillway - to east.

---

[1] https://www.fisheries.noaa.gov/insight/understanding-marine-wildlife-stranding-and-response

27.    Initial notes from observers in 2019 documented that stranded dolphins in Mississippi had an extremely high incidence of lesions caused by extended freshwater exposure. An example of these lesions, which researchers state would be extraordinarily painful to the animal, is shown below.



Photo credit: Institute of Marine Mammal Studies and Mississippi State University

The number of stranded dolphins documented in Mississippi as exhibiting these shocking lesions was approximately 50% of the total, as compared to approximately 10% in Alabama and 7% in Florida.

28.    The strandings in 2011 and 2019 were designated by NOAA as "unusual mortality events," defined under the Marine Mammal Protection Act as "a stranding that is unexpected; involves a significant die-off of any marine mammal population; and demands immediate response." 16 U.S.C. § 1421c.  The extended low salinity caused by Mississippi River water discharged through the Bonnet Carré Spillway, with some contribution from higher flows from coastal rivers, was identified by the National Oceanic and Atmospheric Administration as the leading hypothesis for the 2019 Unusual Mortality Event in the Mississippi Sound.

## VI.  THE MARINE MAMMAL PROTECTION ACT REQUIRES THE CORPS TO OBTAIN AN INCIDENTAL TAKE PERMIT TO "TAKE" MARINE MAMMALS LIKE THE BOTTLENOSE DOLPHIN.

29.    The Marine Mammal Protection Act institutes a moratorium on "taking" marine mammals by any person. 16 U.S.C. §§ 1371.101; 1372.102.  Person includes federal agencies such as the Corps of Engineers.  *Id.* § 1632(10).

30.     "The term 'moratorium' means a complete cessation of the taking of marine mammals and a complete ban on the importation into the United States of marine mammals and marine mammal products, except as provided in this chapter." *Id.* § 1362(8).

31.    "The term "take" means to harass, hunt, capture, or kill, or attempt to harass, hunt, capture, or kill any marine mammal."  *Id.* § 1632(13).

32.    The term "harassment" means any act of pursuit, torment, or annoyance which—

(i) has the potential to injure a marine mammal or marine mammal stock in the wild; or

(ii) has the potential to disturb a marine mammal or marine mammal stock in the wild by causing disruption of behavioral patterns, including, but not limited to, migration, breathing, nursing, breeding, feeding, or sheltering.

*Id.* § 1632(18).

33.    The Marine Mammal Protection Act includes only very limited exceptions to the prohibition on taking marine mammals, none of which apply to operation of the Bonnet Carré Spillway.  The regulations implementing the Marine Mammal Protection Act provide that incidental – which includes unintentional but not unexpected – takes of marine mammals can only be authorized by the National Marine Fisheries Service after an extensive application process that includes proving the impact of the take will be "negligible" and assessing ways of minimizing take.   50 C.F.R. § 216.101-105. This process would compel the Corps to evaluate

means of mitigating the impacts to the bottlenose dolphin population affected by the operations of the Bonnet Carré Spillway.

### VII.  THE CORPS' TAKING OF MARINE MAMMALS IS AN AGENCY ACTION CONTRARY TO LAW, AND ITS FAILURE TO APPLY FOR AN INCIDENTAL TAKE AUTHORIZATION IS AGENCY ACTION UNLAWFULLY WITHHELD OR UNREASONABLY DELAYED

34.    Paragraphs 1-33 above are incorporated here by reference. The Corps of Engineers' acts of opening the Bonnet Carré Spillway and introducing massive amounts of polluted fresh water into Lake Borgne and the Mississippi Sound and their consequent impacts on the Mississippi Sound/Lake Borgne/Lake Boudreau population of bottlenose dolphins constitute a taking of bottlenose dolphins within the meaning of the Marine Mammal Protection Act.

35.    The Corps' taking of bottlenose dolphins in 2019 constitutes an agency action contrary to law under Section 706 of the Administrative Procedure Act, 5 U.S.C. § 706 in that it is contrary to the taking moratorium in the Marine Mammal Protection Act.

36.    The Corps' taking of bottlenose dolphins in 2019 without obtaining an incidental take authorization also constitutes agency action unlawfully withheld or unreasonably delayed under Section 706 of the Administrative Procedure Act, 5 U.S.C. § 706.

37.    The Corps has shown no indication that it intends to go through the process of obtaining incidental take authorization prior to any future operations of the Bonnet Carré Spillway. The Corps has shown no indication that it intends to change its operations of the Bonnet Carré Spillway to minimize or prevent taking of bottlenose dolphins in the Mississippi Sound and Lake Borgne. The Corps' unlawful action and failure to act in accordance with the Marine Mammal Protection Act has harmed the Plaintiffs and left them without an adequate

remedy at law. The Corps' actions in operating the Bonnet Carré Spillway in a manner that results in taking of bottlenose dolphins take place on a schedule that forecloses review by the court and are therefore capable of repetition but evading review.

38.     Plaintiffs are entitled to declaratory judgment that the Corps has acted contrary to law and/or has unlawfully withheld or unreasonably delayed agency action.  The Plaintiffs are further entitled to any expedited relief necessary in the premises, and all other relief general and equitable necessary to ensure compliance with the law.

## VIII.  PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray that the Court, after due proceedings had, grant the following relief:

1.  Enter a declaratory judgment that the Corps of Engineers has acted contrary to law and/or unlawfully withheld or unreasonably delayed agency action in taking bottlenose dolphins through the operation of the Bonnet Carré Spillway and failing to obtain an incidental take permit;

2.  Order the Corps of Engineers to fully comply with the requirements of the Marine Mammal Protection Act with all due haste, pursuant to a schedule established and supervised by this Court;

3.  Require the Corps to take action to avoid take of bottlenose dolphins through operation of the Bonnet Carré Spillway;

4.  Award the plaintiffs their attorneys' fees and costs as required by applicable rules and statutes; and

5.  Award such other and further relief as is proper in the premises.

Dated:  January 22, 2024.

Respectfully submitted,

| | |
|---|---|
| */s/ Robert B. Wiygul*_____ | */s/ Peter C. Abide*_____ |
| Robert B. Wiygul (MSB #7348) | Peter C. Abide (MSB #1026) |
| Waltzer Wiygul & Garside LLC | Currie Johnson & Myers |
| 1011 Iberville Dr. | 925 Tommy Munro Dr. Ste. H |
| Ocean Springs, MS 39564 | Biloxi, MS 39532 |
| Tel: (228) 872-1125 | Tel: (228) 385-1010 |
| Fax: (228) 872-1128 | Fax: (228) 385-1011 |
| robert@wwglaw.com | pabide@curriejohnson.com |
| *Attorneys for Plaintiffs* | *Attorneys for City of Biloxi, Mississippi* |
| | |
| */s/ Gerald H. Blessey*_____ | */s/ Timothy C. Holleman*_____ |
| Gerald H. Blessey (MSB #3591) | Timothy Holleman (MSB #2526) |
| Gerald Blessey Law Firm | Boyce Holleman & Associates |
| 2577 Chatham Ct. | 1720 23rd Avenue |
| Biloxi, MS 39531 | Gulfport, MS 39501 |
| Tel:  (228) 806-4755 | Tel: (228) 863-3142 |
| blesseylaw@me.com | Fax: (228) 863-9829 |
| *Attorney for Plaintiffs* | tim@boyceholleman.com |
| | *Attorney for Harrison County, Mississippi* |
| | |
| */s/ W. F. "Dub" Hornsby*_____ | */s/ Malcolm F. Jones*_____ |
| W.F. "Dub" Hornsby (MSB #100712) | 831 E. Scenic Drive |
| Hornsby Watts PLLC | Pass Christian, MS 39571 |
| 1025 Howard Avenue | Tel: (228) 861-9368 |
| Biloxi, MS 39530 | cityattorney@pass-christian.com |
| Tel: (228) 207-2990 | *Attorney for City of Pass Christian, Mississippi* |
| Fax: (866) 271-4393 | |
| wfh@hornsbywatts.com | |
| *Attorney for City of D'Iberville, Mississippi* | |

14