**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

|  |  |  |
|---|---|---|
| HARRISON COUNTY, MISSISSIPPI, *et al.* | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:24-cv-21-LG-BWR |
| U.S. ARMY CORPS OF ENGINEERS, | ) ) ) | |
| Federal Defendant. | ) ) | |

**FEDERAL DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS**

**TABLE OF CONTENTS**

                                              **Page**

INTRODUCTION ................................................................................................................... 1

ARGUMENT .......................................................................................................................... 1

    I.    Plaintiffs Still Have Not Pled Facts Sufficient to Demonstrate Standing. ........................ 1

        A.    Plaintiffs Still Have Not Established Injury-in-Fact. ...................................... 2

            i.    Any Future Injury is Conjectural and Hypothetical. .................................. 2

            ii.    Plaintiffs Have Not Established a Procedural Injury. .................................. 4

        B.    Plaintiffs Have Not Established Redressability. ............................................. 6

    II.    Plaintiffs Have Failed to State a Claim Upon Which Relief Can Be Granted. ................ 8

        A.    Plaintiffs Have Not Challenged a Final Agency Action. ................................ 8

        B.    Plaintiffs Have Not Identified a Mandatory Duty that the Agency Has Failed to Carry Out. ........................................................................................... 11

CONCLUSION .................................................................................................................... 13

# TABLE OF AUTHORITIES

**Case**                                                           **Page**

*Aransas Project v. Shaw*,
   756 F.3d 801 (5th Cir. 2014) .................................................................................. 2

*Bennett v. Spear*,
   520 U.S. 154 (1997) ............................................................................................ 8, 9

*City of Hearne, Tex. v. Johnson*,
   929 F.3d 298 (5th Cir. 2019) .................................................................................. 4

*City of Sausalito v. O'Neill*,
   386 F.3d 1186 (9th Cir. 2004) .............................................................................. 12

*Crawford v. Hinds Cnty. Bd. of Supervisors*,
   1 F.4th 371 (5th Cir. 2021) ..................................................................................... 2

*Harrison Cnty., Miss. v. U.S. Army Corps of Eng'rs*,
   63 F.4th 458 (5th Cir. 2023) .................................................................................. 11

*In re MDL-1824 Tri-State Water Rights Litig.*,
   644 F.3d 1160 (11th Cir. 2011) ............................................................................. 10

*Loa-Herrera v. Trominski*,
   231 F.3d 984 (5th Cir. 2000) .................................................................................. 2

*Lowman v. Fed. Aviation Admin.*,
   83 F.4th 1345 (11th Cir. 2023) ............................................................................... 7

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) .................................................................................... 2, 3, 4, 6

*Mulhall v. Unite Here Local 355*,
   618 F.3d 1279 (11th Cir. 2010) ............................................................................... 7

*Norton v. S. Utah Wilderness All.*,
   542 U.S. 55 (2004) ................................................................................................ 10

*Sierra Club v. Glickman*,
   156 F.3d 606 (5th Cir. 1998) .................................................................................. 7

*Texas v. Equal Emp. Opportunity Comm'n*,
   933 F.3d 433 (5th Cir. 2019) .................................................................................. 2

*Vill. of Bald Head Island v. U.S. Army Corps of Eng'rs*,
　714 F.3d 186 (4th Cir. 2013) .............................................................................. 8, 10

*Wild Fish Conservancy v. Jewell*,
　730 F.3d 791 (9th Cir. 2013) ..................................................................................... 9

**Statutes**

5 U.S.C. § 551(13) ............................................................................................................. 9

5 U.S.C. § 706(1) ............................................................................................................... 8

5 U.S.C. § 706(2) ............................................................................................................... 8

5 U.S.C. § 706(2)(A) .......................................................................................................... 8

16 U.S.C. § 1362(12) ......................................................................................................... 5

16 U.S.C. § 1371(a)(5)(A) ................................................................................................. 5

16 U.S.C. § 1371(a)(5)(D)(iii) ........................................................................................... 5

16 U.S.C. § 1536(c)(1) ....................................................................................................... 5

28 U.S.C. § 2401(a) ........................................................................................................... 9

42 U.S.C. § 4332(C) .......................................................................................................... 5

**Rules**

Fed. R. Civ. P. 12(b)(1) ..................................................................................................... 1

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 1, 13

**Regulations**

50 C.F.R. § 216.106 ........................................................................................................... 5

# TABLE OF ACRONYMS & ABBREVIATIONS

| | |
|---|---|
| APA | Administrative Procedure Act |
| Corps | United States Army Corps of Engineers |
| ESA | Endangered Species Act |
| MMPA | Marine Mammal Protection Act |
| NEPA | National Environmental Policy Act |
| NMFS | National Marine Fisheries Service |
| Spillway | Bonnet Carré Spillway |

**INTRODUCTION**

Plaintiffs' lawsuit should be dismissed because they have not met their burden to show standing, and they have failed to state a claim that the Court can compel the U.S. Army Corps of Engineers (the "Corps") to engage in a discretionary permitting process under the Marine Mammal Protection Act ("MMPA") before opening the Bonnet Carré Spillway ("Spillway"). In response to Federal Defendant's motion to dismiss, Plaintiffs submitted six declarations and a brief primarily focused on standing. ECF Nos. 9, 10. Despite Plaintiffs' new information and arguments, they still have failed to establish injury-in-fact or redressability. Additionally, Plaintiffs' response brief highlights that Plaintiffs have pled their claims improperly. Therefore, the Court should grant Federal Defendant's motion and dismiss Plaintiffs' Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

**ARGUMENT**

Plaintiffs' response brief falls short of rebutting Federal Defendant's showing that this case should be dismissed.

**I.     Plaintiffs Still Have Not Pled Facts Sufficient to Demonstrate Standing.**

Plaintiffs' response brief and declarations focus on establishing standing, but Plaintiffs still have not shown that they meet all three required elements, in particular injury-in-fact and redressability.[1]

---

[1] Federal Defendant disputes Plaintiffs' analysis of causation connecting the 2011 and 2019 Spillway openings to bottlenose dolphin deaths, ECF No. 10 at 18-19, particularly given outside factors during those years such as the Deepwater Horizon Oil Spill in 2010. For example, according to the National Oceanic and Atmospheric Administration's Unusual Mortality Event investigation and Deepwater Horizon Natural Damage Resource Assessment, the Deepwater Horizon Oil Spill is the most likely explanation of the persistent, elevated strandings of all cetaceans in Alabama, Mississippi, and Louisiana from March 2010 through July 2014. *See* NOAA Fisheries, https://www.fisheries.noaa.gov/national/marine-life-distress/2010-2014-cetacean-unusual-mortality-event-northern-gulf-mexico#overview (last visited May 6, 2024).

### A. Plaintiffs Still Have Not Established Injury-in-Fact.

Plaintiffs are correct that "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice[.]" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). However, even at the pleading stage, Plaintiffs must still demonstrate that they have suffered "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560 (cleaned up). Although Plaintiffs have submitted declarations with their response brief that allege concrete and particularized injuries, Plaintiffs have not sufficiently established that their injuries are actual or imminent. Nor have Plaintiffs established a procedural injury.

#### i. Any Future Injury is Conjectural and Hypothetical.

Plaintiffs' complaint and response brief focus on alleged past injuries incurred in 2011 and 2019. *See, e.g.*, ECF No. 10 at 10-16. The law is well settled that past injuries are insufficient to confer standing. *See Crawford v. Hinds Cnty. Bd. of Supervisors*, 1 F.4th 371, 376 (5th Cir. 2021); *Aransas Project v. Shaw*, 756 F.3d 801, 808 (5th Cir. 2014). Rather, Plaintiffs need to establish that there is an actual injury at the time of filing. *Texas v. Equal Emp. Opportunity Comm'n*, 933 F.3d 433 (5th Cir. 2019) ("In identifying an injury that confers standing, courts look exclusively to the time of filing." (quoting *Loa-Herrera v. Trominski*, 231 F.3d 984, 987 (5th Cir. 2000))). Plaintiffs claim that the 2019 openings "continue[] to have

---

Despite the parties' disagreement, Federal Defendant acknowledges that Plaintiffs' new declarations make additional factual allegations, which attempt to trace their purported injuries to operation of the Bonnet Carré Spillway. Because these new allegations may be sufficient at the pleading stage – at least with respect to the 2019 Unusual Mortality Event – Federal Defendant focuses its present argument on Plaintiffs' larger failures to establish injury-in-fact and to demonstrate that a court order would redress their purported harms. However, Federal Defendant notes that Plaintiffs' causation allegations, even supplemented by the declarations, are highly general and would not survive challenge in later stages of litigation.

impacts today," yet they fail to name a single ongoing impact. For example, they say the impacts from dolphin strandings on Biloxi's property and its business base "last years" but do not provide any specific way that Biloxi was still impacted at the time of filing this suit. ECF No. 10 at 12. Mayor Gilich's declaration discusses tourism, property values, boat leases, and other economic interests that are allegedly impacted by the presence of bottlenose dolphins, but the declaration says nothing about how the Spillway openings in 2019 have any ongoing impact in 2023 (the time of filing suit) or even 2024 (today) on Biloxi's economy. Decl. of A.M. Gilich, ECF No. 9-2 ¶ 4-6. Similarly, Plaintiffs claim that the injury to Harrison County "*can* last for years" without any specific explanation for how, in this case, the alleged injury is ongoing into 2023 or 2024. ECF No. 10 at 14 (emphasis added). While Mr. Ladner's declaration lists potential cascading effects, like conventions at hotels not getting booked years in advance or hotel room taxes declining, Mr. Ladner never claims that such effects are actually occurring now because of the 2019 Spillway openings. Decl. of Marlin Ladner, ECF No. 9-3 ¶ 8. Plaintiffs do not even try to allege ongoing injury for the Mississippi Hotel and Lodging Association or the Mississippi Commercial Fisheries United. These clear omissions are telling; Plaintiffs *cannot* establish that any alleged injuries from the 2019 Spillway openings are ongoing today. Plaintiffs' claims of injuries experienced in 2019 alone do not confer standing today.

Plaintiffs also allege a risk of future injury because "the Bonnet Carré Spillway opens regularly" but this claim is unsupported for two reasons. ECF No. 10 at 8. First, as the Court is aware, in the 91 years since completion of the Spillway, it has been opened only 15 times. This rate of opening can hardly be called regular. The last Spillway opening was four years ago from April 3 to May 1, 2020. Plaintiffs cannot predict when or if the Spillway will be opened again, contrary to the requirement that they must demonstrate "imminent" injury. *Lujan*, 504 U.S. at

560-61. Plaintiffs' predictions of "future increases in precipitation" and "mega floods" at some indefinite time in the future, ECF No. 10 at 20-22, are speculative. Moreover, even if the Bonnet Carré Spillway were to be opened in the future, Plaintiffs do not allege injury from every Spillway opening. For example, they make no mention of the openings in 2016 (210 bays at maximum flow of 203,000 cfs) or 2020 (90 bays at maximum flow of 90,000 cfs). Indeed, to the contrary, Mr. Skrmetta's declaration attests that "revenue from the dolphin cruises helped save our company" in 2020 when Covid-19 related restrictions shut down Ship Island. Decl. of Louis Skrmetta, ECF No. 9-4 ¶ 10. Although at this stage Plaintiffs need not prove future injury with absolute certainty, their contention that future injury is substantially likely to occur is hypothetical at best.

### ii. Plaintiffs Have Not Established a Procedural Injury.

A procedural injury exists when "plaintiffs are seeking to enforce a procedural requirement the disregard of which could impair a separate concrete interest of theirs (e.g., the procedural requirement for a hearing prior to denial of their license application, or the procedural requirement for an environmental impact statement before a federal facility is constructed next door to them)." *Lujan*, 504 U.S. at 572; *see also City of Hearne, Tex. v. Johnson*, 929 F.3d 298, 301 (5th Cir. 2019) (observing that procedural "injuries occur when a defendant fails to follow a procedure, and this failure increases the risk of future harm" (cleaned up)). In this case, there is not a procedural requirement that has been disregarded.

As explained in Federal Defendant's motion to dismiss, the MMPA does not contain any language about a mandatory duty to apply for an incidental take authorization; the decision to apply is discretionary. Indeed, the "shall" language in the relevant MMPA provision only applies to the authorizing agency – the National Marine Fisheries Service ("NMFS") – not the applicant.

4

*See* 16 U.S.C. § 1371(a)(5)(A)(i) ("upon request . . . by citizens of the United States who engage in a specified activity (other than commercial fishing) within a specified geographical region, the Secretary[2] shall allow, during periods of not more than five consecutive years each, the incidental, but not intentional, taking by citizens . . . of marine mammals . . . "). This is different from other environmental statutes that contain non-discretionary procedural requirements for Federal agencies. For example, the National Environmental Policy Act ("NEPA") requires "all agencies of the Federal Government shall . . . include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement" analyzing certain factors. 42 U.S.C. § 4332(C). In the same way, the Endangered Species Act ("ESA") requires "each Federal agency shall . . . request of the Secretary information whether any species which is listed or proposed to be listed may be present in the area of such proposed action. If . . . present, such agency shall conduct a biological assessment . . ." 16 U.S.C. 1536(c)(1). Here, Plaintiffs have not identified a procedural requirement in the MMPA from which a procedural injury could stem.

Plaintiffs try to force a procedural injury into the MMPA incidental take authorization provisions by pointing out that public notice and comment would be part of the process, and Plaintiffs want the opportunity to "utilize" that "procedural safeguard[.]" ECF No. 10 at 17. This is a reference to the MMPA provision setting forth that *NMFS* (not the Corps) evaluates an application for incidental take authorization, issues a regulation in the Federal Register setting forth the means of effecting the least practicable adverse impact on the affected species or stocks and its habitat, and handles a public notice and comment process on that regulation, before issuing a Letter of Authorization. *See* 16 U.S.C § 1371(a)(5)(A), (a)(5)(D)(iii); *see also* 50

---

[2] "Secretary" here refers to the Secretary of Commerce. 16 U.S.C. § 1362(12).

5

C.F.R. § 216.106. Therefore, it is misleading when Plaintiffs' declarants claim that they "will participate" in the Corps' application process "to ensure that all alternatives for protection of the bottlenose dolphin are considered and where possible implemented." ECF No. 9-1 ¶ 12; *see, e.g.*, ECF No. 9-2 ¶ 11, ECF 9-3 ¶ 9. The Plaintiffs' comments would not have an impact on the Corps' decisionmaking as to whether to open the Spillway; at most, Plaintiffs' comments would be reviewed by NMFS at the end of the incidental take authorization application process before NMFS issues the Letter of Authorization. With their inapt comparison to the procedural requirements in the ESA and NEPA, ECF No. 10 at 17, Plaintiffs demonstrate their lack of familiarity with the MMPA's different framework. But Plaintiffs cannot force a procedural requirement where there is none. For these reasons, Plaintiffs have failed to establish a procedural injury.

### B. Plaintiffs Have Not Established Redressability.

Plaintiffs' response brief seems to conflate the "actual and imminent" requirement to establish injury-in-fact with the "likely, as opposed to merely 'speculative'" requirement to establish redressability. *Compare* ECF No. 10 at 20, *with Lujan*, 504 U.S. at 561. In this case, Plaintiffs allege injury resulting from bottlenose dolphin deaths in 2019. As explained in Federal Defendant's motion to dismiss, any alleged injuries incurred in 2019 cannot be redressed by the remedy Plaintiffs seek – a future-looking authorization application process. And a judgment instructing the Corps to apply for an incidental take authorization is not likely to bring an end to bottlenose dolphin deaths in the Mississippi Sound-Lake Borgne-Lake Boudreau population for two reasons. First, if the Corps applied for and received an incidental take authorization for opening the Bonnet Carré Spillway, the Corps would be authorized to do exactly what Plaintiffs allege causes their injury – take a certain amount of bottlenose dolphins. Second, while a court

order may require the Corps to apply for a 5-year (the maximum length under the statute) incidental take authorization under the MMPA, the Corps may not even need to open the Spillway during that time. Meanwhile, bottlenose dolphins could die from a number of other causes, inflicting harms that could not be redressed by a court order in this case. *See* NOAA, Common Bottlenose Dolphin, https://www.fisheries.noaa.gov/species/common-bottlenose-dolphin (last visited May 6, 2024) (listing "a variety of human-caused and natural threats and stressors"). Therefore, Plaintiffs have not established that "a favorable decision would amount to a significant increase in the likelihood that [they] will obtain relief that directly redresses the injury suffered." *Mulhall v. Unite Here Local 355*, 618 F.3d 1279, 1290 (11th Cir. 2010) (internal quotation omitted).

As to redressability for a procedural injury (to the extent one exists here), while the standard is somewhat relaxed, Plaintiffs must still show it is "reasonably probable" that the Corps applying for an MMPA incidental take authorization will "affect their concrete interest" in the presence of bottlenose dolphins, and they have not made this showing. *Lowman v. Fed. Aviation Admin.*, 83 F.4th 1345, 1356 (11th Cir. 2023) (internal quotation omitted). Plaintiffs have not explained how the discretionary decision of the Corps applying for an incidental take authorization under the MMPA is designed to protect Plaintiffs' alleged interests in bottlenose dolphins. *See Sierra Club v. Glickman*, 156 F.3d 606, 613 (5th Cir. 1998) ("[T]he plaintiff must show that the procedures in question are designed to protect some threatened concrete interest of its that is the ultimate basis of its standing." (cleaned up)). Moreover, as explained above, Plaintiffs have not established that there is a procedural requirement in the MMPA from which their injury could stem.

7

## II. Plaintiffs Have Failed to State a Claim Upon Which Relief Can Be Granted.

Even if the Court decides that Plaintiffs have sufficiently demonstrated standing at this stage, Plaintiffs' response to Federal Defendant's 12(b)(6) argument illustrates the problems with the way that Plaintiffs have pled their claims. The parties agree on some points: that the MMPA does not contain a citizen suit provision and that Plaintiffs must bring their claims under the Administrative Procedure Act ("APA"). There the agreement ends. Plaintiffs seem to think that they can simply allege a violation of the MMPA and label it an APA claim. But labeling does not fix the problem here and, accordingly, Plaintiffs have failed to state a claim upon which relief can be granted.

Because the MMPA does not contain a citizen suit provision, Plaintiffs can only bring an APA claim for an MMPA violation if they either 1) challenge a final agency action, 5 U.S.C. § 706(2)(A), or 2) identify a mandatory duty that the agency has failed to carry out, *id.* § 706(1). Plaintiffs have done neither in this lawsuit. Instead, Plaintiffs allege a violation of the MMPA (i.e., "take" contrary to the MMPA's moratorium) without satisfying the requisite APA requirements.

### A. Plaintiffs Have Not Challenged a Final Agency Action.

To start, contrary to their assertions otherwise, Plaintiffs have not identified any final agency action or even decisionmaking process that they wish to challenge. Final agency action "is a term of art that does not include all [agency] conduct such as, for example, constructing a building, operating a program, or performing a contract[,]" but instead refers to an "agency's [final] *determination* of rights and obligations[.]" *Vill. of Bald Head Island v. U.S. Army Corps of Eng'rs*, 714 F.3d 186, 193 (4th Cir. 2013) (citing *Bennett v. Spear,* 520 U.S. 154, 177-78 (1997)). Agency action is only "final" under the APA if it meets two conditions. First, the action

must mark the "consummation of the agency's decisionmaking process--it must not be of a merely tentative or interlocutory nature." *Bennett*, 520 U.S. at 177-78 (cleaned up). Second, the action must be one by which "rights or obligations have been determined, or from which legal consequences will flow." *Id.* at 178 (cleaned up). Plaintiffs argue that "the act of opening the Spillway . . . is a decision to take an action and in this case that action had specific consequences[.]" ECF No. 10 at 24. However, as explained in Federal Defendant's motion to dismiss, the Corps' operations of the Bonnet Carré Spillway are not final agency actions under the APA but rather implementation of an existing Water Control Plan that is not itself at issue in this case.[3] *See* ECF No. 7 at 18 n.7.

Several circuit courts have declined to consider similar claims for lack of final agency action. For example, in *Wild Fish Conservancy v. Jewell*, the plaintiff challenged a Federal agency's operation of a dam with radial gates to divert water to a hatchery. 730 F.3d 791, 793 (9th Cir. 2013). The Ninth Circuit found that the agency's act of operating the gates did have immediate physical consequences, but was not "fairly analogous to a 'rule, order, license, sanction, [or] relief.'" *Id.* at 801 (quoting 5 U.S.C. § 551(13)). The Ninth Circuit went on to explain that the plaintiff's claims "do not implicate a final agency action" because "the individual acts of closing the gates at structure 2 'do not mark the consummation of the agency's decisionmaking process'" but rather "constitute day-to-day operations that merely implement operational plans for the Hatchery." *Id.* at 801-02 (quoting *Bennett,* 520 U.S. at 177-78). The Ninth Circuit held that it lacked jurisdiction to consider the claim. *Id.* at 802. Similarly, in *Village of Bald Head Island*, the plaintiffs sought to compel the Corps to implement certain

---

[3] Plaintiffs cannot amend their complaint to challenge the Water Control Plan (first published in 1984 and revised in 1999) because such a challenge is precluded by the APA's six-year statute of limitations. *See* 28 U.S.C. § 2401(a).

protections of adjacent beaches against the adverse effects of a navigation channel restoration project and restore sand to those beaches. 714 F.3d at 188. The Fourth Circuit recognized: "'Agency action' not only has a limited meaning, but it also must be 'circumscribed [and] discrete,' as those characteristics are inherent in the APA's enumeration of the categories of agency action subject to judicial review—i.e., rule, order, license, sanction, or relief." *Id.* at 194 (quoting *Norton v. S. Utah Wilderness All. ("SUWA")*, 542 U.S. 55, 62 (2004)). Relying on *SUWA*, the Fourth Circuit set forth the reasons why judicial review must be limited to discrete agency action – to "preclude[] broad programmatic attacks and help[] ensure that courts are not injected into day-to-day agency management[.]" 714 F.3d at 194 (cleaned up). Ultimately, the Fourth Circuit held that the plaintiffs' challenge to the Corps' implementation of ongoing periodic maintenance dredging did not constitute final agency action subject to review under the APA. *Id.* at 196. Additionally, the Eleventh Circuit rejected attempts to challenge the Corps' temporary, *ad hoc* allowance of water withdrawals made while the Corps separately worked to develop a water control manual governing operation of a reservoir project. *In re MDL-1824 Tri-State Water Rights Litig.*, 644 F.3d 1160, 1184 (11th Cir. 2011). In that case, litigation issues had prevented the Corps from issuing a new water control manual that would represent a "determination of rights or obligations[.]" *Id.* at 1181-85. The Eleventh Circuit stated: "While it is true that access to water has been affected by the Corps' water supply allocations . . . that fact does not demonstrate that any *future rights* have been determined" by such temporary operations and, for this reason, the court lacked jurisdiction over the claims. *Id.* at 1185 (emphasis added). So too here, the Corps' implementation of its existing Water Control Manual and opening of the Bonnet Carré Spillway during certain river conditions is not a consummation of agency

decisionmaking, nor do rights, obligations, or legal consequences follow as a result of the Spillway opening.

Clearly, Plaintiffs' end goal is to inject themselves in the Corps' operation of the Spillway. *See* ECF No. 10 at 2 ("The complaint further states by long-term planning and construction, the Corps can reduce or mitigate the need for use of the Bonnet Carré Spillway."). This attempt is similar to how the same Plaintiffs previously tried to shoehorn the Spillway's operations into NEPA's requirement for a supplemental environmental impact statement. *See Harrison Cnty., Miss. v. U.S. Army Corps of Eng'rs*, 63 F.4th 458, 465-66 (5th Cir. 2023) ("The Corps' continued operation of the Spillway under long-established plans is [not a federal action still being considered] . . . Because the Corps has no duty to prepare the supplemental [environmental impact statement] the plaintiffs seek, the plaintiffs have no APA claim for unlawful agency inaction[.]"). Just as in that case, Plaintiffs' search for a way to challenge the Corps here is ultimately "one of square pegs and round holes." *Id.* at 463. Without a citizen suit provision or a discrete final agency action identified, Plaintiffs have no legal right to their desired involvement in Spillway operations.

**B. Plaintiffs Have Not Identified a Mandatory Duty that the Agency Has Failed to Carry Out.**

Not only have Plaintiffs failed to identify final agency action, they also have not identified a mandatory duty that the Corps has failed to carry out. In their response brief, Plaintiffs argue that the Corps has a non-discretionary "obligation to pursue" an exception to the MMPA's moratorium on taking marine mammals, ECF No. 10 at 25, but this interpretation is not supported by the statute. As explained in Federal Defendant's motion to dismiss and above, the MMPA does not contain any language about a mandatory duty to apply for an incidental take authorization. *See supra* at 4-5.

Plaintiffs mistakenly read Federal Defendant's motion as arguing that a violation of the MMPA take prohibition is not an agency action contrary to law *unless* NMFS decides to bring an enforcement action. ECF No. 10 at 5, 24. Plaintiffs seem to miss the point. In fact, Federal Defendant's motion argues that Plaintiffs cannot stand in for NMFS to enforce the statute. The MMPA does not require a procedural consultation process, like NEPA and the ESA do. A prohibition *against an act* is not the same as an affirmative duty *to act*. Without identifying a challenge that can be brought under the APA, Plaintiffs have no right of action.

Plaintiffs' reliance on *City of Sausalito v. O'Neill* is inapt. Unlike here, the plaintiffs in that case brought an APA § 706(2) claim challenging a discrete final agency action. The National Park Service had taken an identified final agency action by issuing a new management plan involving renovation and expansion of an old Army fort and a Final Environmental Impact Statement analyzing that plan. 386 F.3d 1186, 1194-96 (9th Cir. 2004). The plaintiff city submitted a declaration describing the specific ways that the National Park Service's plan would result in detrimental effects to tax revenue, traffic, city management, and public safety functions. *Id.* at 1197. While the Ninth Circuit held that the plaintiff city was within the MMPA's "zone of interests" for standing purposes, it never reached the merits of the plaintiff's MMPA claim. *Id.* at 1204-05. The present case is easily distinguished from *City of Sausalito* because, even if Plaintiffs fall under the MMPA's "zone of interests" for standing, they have failed to identify a challengeable final agency action or discrete mandatory duty under the APA.

Plaintiffs argue that they have a broad grant of authority under the APA to challenge the Corps' compliance with the MMPA, but they fail to meet any of the APA requirements for bringing suit. Plaintiffs do not challenge any final agency action pursuant to APA § 706(2). And Plaintiffs' APA § 706(1) challenge fails because they do not identify any mandatory duty the

Corps has failed to carry out. Plaintiffs should not be allowed to circumvent APA requirements or write a non-existent citizen suit provision into the MMPA. Instead, this Court should dismiss Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6).

## CONCLUSION

For the foregoing reasons, and for the reasons stated in Federal Defendant's Motion to Dismiss, Federal Defendant respectfully requests that the Court grant the Motion to Dismiss Plaintiffs' Complaint.

Date: May 6, 2024

Respectfully submitted,

TODD KIM, Assistant Attorney General
S. JAY GOVINDAN, Section Chief
MEREDITH FLAX, Deputy Section Chief
U.S. Department of Justice
Environment & Natural Resources Division

 */s/ Taylor A. Mayhall*
TAYLOR A. MAYHALL
Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife and Marine Resources Section
4 Constitution Square
150 M Street NE
Washington, DC 20002
Tel: (202) 598-3796
Fax: (202) 305-0275
Email: taylor.mayhall@usdoj.gov

LAUREN DICK
Assistant United States Attorney
1575 20th Avenue
Gulfport, MS 39501
GA Bar # 401353
Tel: (228) 563-1560
Fax: (228) 563-1571
Email: lauren.dick@usdoj.gov

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2024, I electronically filed the foregoing Federal Defendant's Reply In Support of Motion to Dismiss with the Clerk of the Court for the United States District Court for the Southern District of Mississippi using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

*/s/ Taylor A. Mayhall*
Counsel for Defendant
